R. G. FORMAN *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol 7—667, 681.]

**Continuance on Account of Absent Witness.**

In the trial of one charged with murder it is error to refuse him a continuance upon his application showing diligence, that the evidence of such witness was material, and that the witness could be procured at another time, where the application was made in good faith and not for mere delay.

**Res Gestae.**

A declaration of one accused of murder, who is a deputy marshal, made a few minutes prior to his attempt to arrest a person, to the effect that he was starting to make an arrest, is admissible as a part of the res gestae when in trying to make such arrest the accused took life.

**Question of Law for the Court.**

Where one who claims to be a deputy marshal is on trial for murder and is shown to have taken a life in an effort to make an arrest, the question of whether he was at the time such deputy, is one of law for the court to determine, and it is error in such trial for the court to charge the jury that it must determine the question.

## APPEAL FROM NICHOLAS CIRCUIT COURT.

### March 25, 1886.

OPINION BY JUDGE LEWIS:

Appellant was, under an indictment for the murder of J. Cravens, convicted of manslaughter and sentenced to confinement in the penitentiary for the term of fourteen years. The time of the homicide was January 1, 1885, and the place near to but inside the corporate limits of the city of Mount Sterling on the turnpike road leading to Owingsville, along which Cravens and a negro man, Withers, was walking when overtaken by appellant, who was on horseback.

Withers testified substantially that appellant when he came up to them dismounted, and grabbing hold of Cravens said to him, "Give up that pistol," to which the latter replied he had no pistol, when witness told him to let Cravens go, he had no pistol, that he, witness, would take him out of town, to which appellant replied that if witness did not let him, appellant, go, he would shoot him, witness; that after appellant shot he told witness to give him Cravens' pistol, to which he replied he had no pistol and appellant then felt around Cravens and he had no pistol. Cravens told appellant to shoot him again, he had no pistol, and fell to the ground, and appellant then got on his horse and rode rapidly away toward town. He further stated that Cravens, before he was shot, caught hold of appellant's wrist with his left hand and kept the other in his right pocket; that the two clinched each other in the middle of the road and scuffled before the shot was fired.

Three or four other witnesses for the commonwealth testified they saw the difficulty; and according to the statement of one of them appellant and Cravens had hold of each other scuffling five or ten minutes, appellant telling him to give up his pistol. None of the witnesses for the commonwealth testified they saw Cravens with a pistol, or heard one fired by him, and some of them stated

he had none. But one introduced by the defense stated that he met Cravens on the road and just before he was killed and that he drew and presented a pistol at the witness. Others who were at the house on the roadside where appellant took his dinner that day say they heard a pistol shot soon after Cravens and Withers passed the house and saw smoke rising from the place where they were. They further state that as soon as the pistol shot was heard by appellant he left the house, mounted his horse hitched at the gate, and pursued and overtook Cravens and Withers at a point about three hundred yards from the house; that they saw appellant and Cravens scuffle awhile and go down out of their sight; they got up and scuffled near to the fence off the road, when a puff of smoke was seen and they again went down out of sight of the witnesses; that appellant then mounted his horse and came back to the house, having in his left hand two pistols, one of which, after shooting out a cartridge shell, he reloaded and put in his pocket and then mounted his horse and rode up town carrying the other pistol in his hand and surrendered.

The first ground relied on for reversal is the refusal of the court to grant a continuance on account of the absence of a witness named Tapp, by whom appellant stated in his affidavit he could truthfully prove that he on the day of the killing loaned to Cravens a pistol, being one of those appellant had in his hand when he returned from the place of killing and which he delivered to the town marshal. It appears that January 4, 1885, two days after the killing, appellant was committed without bail and sent to the Fayette county jail, where he remained until June 4, when he was brought back to Mt. Sterling to answer the indictment found against him June 2, 1885. He stated in his affidavit that he was not informed that Tapp would testify as mentioned until his return to Mt. Sterling and that he immediately caused summons to issue to the county where the witness resided, but he was temporarily absent therefrom and could not be found. It satisfactorily appears that appellant used proper diligence to procure the attendance of the absent witness; that there were reasonable grounds to believe his attendance could have been procured at the next term of court; and there is nothing in the record showing that the application for continuance was made in bad faith and for delay merely.

It seems to us, therefore, that he was entitled to a continuance if the evidence be regarded as material for his defense. Whether the deceased did or did not have a pistol is an inquiry which the expected testimony of the absent witness could certainly go far to determine. Without that testimony the decided preponderance of the evidence was that he had no pistol, for not only does the witness, Withers, who was in company with him state that he neither fired nor had a pistol, but other witnesses for the commonwealth corroborated him. If, however, the deceased borrowed the same pistol from Tapp which appellant brought from the place of killing, and delivered to the town marshal, it is at least a reasonable conclusion that the deceased fired the pistol as stated by appellant's witnesses, which was a violation of a town ordinance; and thus not only are the witnesses for the commonwealth contradicted, but appellant was justified as deputy town marshal, if he was such officer, in pursuing and arresting him, and the scuffle which took place between them might not necessarily be regarded as the result of a wanton and illegal assault by appellant. At least appellant was entitled on his trial to whatever weight or significance the fact the absent witness would prove the jury might see proper to give to it.

Connected with this fact is the declaration made by defendant at the house where he was eating dinner at the time he was about starting in pursuit of the deceased and Withers that he was going to arrest the person who had just passed along the road and had fired the pistol. The court in our opinion erred in excluding this declaration from the jury, for it clearly was not the result of calculated policy on the part of appellant in anticipation of or connected with a design to take the life of Cravens, there being no evidence of ill will against him. But it was part of the immediate preparation for pursuing and arresting the person who had fired the pistol, and must therefore be regarded as the res gestae and competent evidence.

But the declaration of appellant after he got back to the house, which was substantially that he was compelled to take the life of Cravens in the necessary defense of his own, we are inclined to the opinion was properly excluded, for though but a short time had elapsed, according to one witness, one and a half minutes, the conduct of appellant and the circumstances attending the declara-

tion tend to show that he was then in a condition of mind to perceive the importance and to enable him to get up excuses and explanations of what he had done.

During the trial the question arose whether the appellant was at the time a deputy marshal of the town of Mt. Sterling, and the court not only erroneously left the determination of that question to the jury but excluded competent evidence bearing on it. The evidence shows that one Bunch was elected town marshal in August, 1884, and instead of making the appointment of deputy marshal directly, as he had the right to do, presented the names of three persons, appellant being one of them, to the town or city council with the request that the body select one, giving as a reason that each of the three persons had voted for him and he disliked to give preference to either. Thereupon a vote was taken by the city council, and appellant receiving a majority was chosen and from that time he continued to act as deputy marshal, having, as the police judge states, been sworn in by him, and was so acting when Cravens was killed. He was recognized by the council, received pay from the town treasury, executed process, made arrests and in every respect acted and was treated as deputy marshal by the town authorities and by the chief marshal, as appears from the records of the council and of the police court, and the testimony of every witness.

But according to the statement of the marshal, Bunch, appellant was not appointed by him but by the council, and consequently if he is marshal de facto was not such de juris as the chief marshal and not the council has the legal authority to make the appointment. But we think beyond question he was appointed by the chief marshal, for otherwise the conduct of the latter in recognizing and permitting appellant to act as deputy, his deputies wearing the uniform and insignia of office, and holding himself out as such deputy, would be inexplicable and inexcusable. In our opinion the evidence clearly shows that appellant was at the time of the killing deputy marshal of Mt. Sterling, legally appointed, qualified and acting, and the court below erred in not assuming it as an established fact in the instruction given on the subject, instead of leaving it to the jury to determine whether he was or not such deputy marshal. In other respects the instructions given seem to be sufficiently comprehensive and correct.

65

For the errors mentioned, by which we think the substantial rights of the accused were prejudiced, the judgment must be *reversed* and cause remanded for a new trial and further proceedings consistent with this opinion.

*W. P. Thorne, Wood & Day, for appellant.*

*Henry I. Stone, for appellee.*